UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SOLERO DAFRED URBINA GARCIA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CIV-25-1225-J |
| | ) |
| RUSSELL HOLT, et al., | ) |
| | ) |
| Respondents. | ) |

**ORDER**

Petitioner Solero Dafred Urbina Garcia, a noncitizen from Honduras, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. [Doc. No. 1]. The matter was referred to United States Magistrate Judge Suzanne Mitchell consistent with 28 U.S.C. § 636(b)(1)(B),(C). Judge Mitchell issued a Report and Recommendation recommending that the Court: (1) grant Petitioner's habeas application, in part, and (2) order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days or otherwise release him if he has not received a lawful bond hearing within that period. *See* [Doc. No. 13]. Respondents filed a timely objection [Doc. No. 14], triggering de novo review. *See Quint v. Vail Resorts, Inc.*, 89 F.4th 803, 808 (10th Cir. 2023).

For the reasons discussed below, the Report and Recommendation is ADOPTED, and the Petition is GRANTED to the extent it alleges Petitioner's lack of bond hearing violates federal law.

I.     **Background**

Petitioner is a Honduran citizen who has lived in the United States since approximately 2017.[1]  He has been residing in Tulsa, Oklahoma.  On September 2, 2025, Petitioner was arrested by ICE and has been detained without bond at the Cimmaron Correctional Facility in the Western District of Oklahoma.  Petitioner filed his Petition, asserting that his continued detention without a bond hearing violates the Immigration and Nationality Act (INA) and his Fifth Amendment due process rights.[2]

II.    **Report and Recommendation**

Upon review, Judge Mitchell concluded that (1) this Court has jurisdiction to consider Petitioner's claims, and (2) Petitioner's continued detention without a bond hearing violates the INA.  *See* Rep. & Rec. at 5-19.  On the latter finding, Judge Mitchell found that Petitioner is not seeking admission as contemplated under 8 U.S.C. § 1225(b)(2)(A) and, thus, 8 U.S.C. § 1226(a) controls his detention.

III.   **Analysis**

   A.    **Jurisdiction**

Respondents first object to Judge Mitchell's finding on jurisdiction.  Specifically, Respondents contend that under 8 U.S.C. § 1252(g), this Court lacks jurisdiction to hear "'any cause or claim by or on behalf of any alien arising from the decision or action by [DHS] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.'"  *Id.* at 2 (quoting § 1252(g)).  Respondents argue that Judge Mitchell erred in failing to

---

[1] In 2017, Immigration and Customs Enforcement (ICE) placed Petitioner into removal proceedings but dismissed those proceedings in 2024.
[2] Because the Court grants Petitioner relief based upon a violation of the INA, the Court declines to address Petitioner's constitutional claim.

determine whether Petitioner's claims were "arising from" or "directly and immediately connected to" one of these enumerated actions and suggest that by detaining Petitioner, it "commence[d]" the proceedings against him and thus this Court may not hear his claims. *Id.* at 2. In support, Respondents cite *Tsering v. U.S. Immigr. & Customs Enf't*, 403 F. App'x. 339, 342–43 (10th Cir. 2010).

In *Tsering*, the petitioner alleged his substantive and procedural due process rights were violated when ICE removed him based on a false identity that represented him to be a Nepali citizen when he was Tibetan. *See Tsering*, 403 F. App'x at 343. On appeal, the Tenth Circuit held that § 1252(g) precluded jurisdiction because the handling of the petitioner's travel documents was "directly and immediately connected to the execution of his removal order." *Id.* (agreeing with the Fifth Circuit that "claims that clearly are included within the definition of 'arising from' are those claims connected directly and immediately with a decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders" (cleaned up; citation omitted).

But eight years after *Tsering*, the Supreme Court held that § 1252(g) must be read narrowly and applied only to "those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294-95 (2018). Specifically, the court instructed against interpreting § 1252(b)(9)'s "arising from" language in an "expansive" or "extreme" way. *Id.* at 293. As the court explained, "legal questions do not 'arise from' actions taken to remove a non-citizen simply because the legal questions exist in the context of removal proceedings[.]" *Id.* (cleaned up).

Here, Petitioner is simply alleging that his continued detention without a bond hearing is in violation of federal law (the INA). Hence, his claims do not "arise from" and are not directly and immediately connected to the Attorney General's decision to commence proceedings, proceed

3

with the adjudication of Petitioner's case, or any removal order. As such, § 1252(g) does not strip this Court of jurisdiction. *See Diaz v. Holt*, No. CIV-25-1179-J, 2025 WL 3296310, at *1 (W.D. Okla. Nov. 26, 2025) ("Because Petitioner does not challenge Respondents' decision to commence or adjudicate proceedings or execute removal orders, the Court concludes that § 1252(g) does not jurisdictionally bar his Petition."); *Mendoza Gutierrez v. Baltasar*, No. 1:25-CV-2720-RMR, 2025 WL 2962908, at *3 (D. Colo. Oct. 17, 2025) ("[Section] 1252(g) does not deprive the Court of jurisdiction to consider the narrow legal questions of whether Mr. Gutierrez's detention under 8 U.S.C. § 1225 violates the INA and whether he is entitled to a bond hearing under § 1226's discretionary detention framework."); *Salvador F.-G. v. Noem*, No. 25-CV-0243-CVE-MTS, 2025 WL 1669356, at *5 (N.D. Okla. June 12, 2025) ("To the extent petitioner's claims challenge his detention as unconstitutional and challenge the extent of DHS's statutory authority to revoke a bond issued by an immigration judge, the Court finds that it has subject-matter jurisdiction.").

In sum, the Court agrees with Judge Mitchell that § 1252(g) does not jurisdictionally bar the Amended Petition.[3]

**B.    Section 1225**

Regarding the merits of Petitioner's INA claim, Respondents object to Judge Mitchell's conclusion that § 1226(a) controls Petitioner's detention. Respondents insist that § 1225(b)(2)(A) controls because Petitioner is an applicant for admission and the section unambiguously requires

---

[3] Respondents ask the Court to follow the decision in *Acxel S.Q.D.C. v. Bondi*, No. 25-CV-3348-PAM, 2025 WL 2617973, at *3 (D. Minn. Sept. 9, 2025), where the court found that § 1252(g) stripped its jurisdiction to hear a similar § 1225(b)(2)(A) detention claim. But the Court disagrees and reiterates that Petitioner's challenge focuses solely on his continued detention without bond and not Respondents' decision to commence proceedings, adjudicate his case, or execute a removal order.

4

all applicants for admission to be subject to mandatory detention. Specifically, they suggest that *any* non-legal resident is essentially seeking admission by virtue of being in the United States.

The relevant statute here provides:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

Respondents insist this section unambiguously requires all applicants for admission to be subject to mandatory detention and urges the Court to find that *any* applicant for admission is automatically deemed an alien seeking admission.[4] But the Court agrees with Judge Mitchell that if all applicants for admission are also "seeking admission," then § 1225(b)(2)(A)'s inclusion of the phrase "seeking admission" would be redundant and courts should avoid statutory interpretations that "make any part [of the statute] superfluous." *Fuller v. Norton*, 86 F.3d 1016, 1024 (10th Cir. 1996) (cleaned up). Another court explained it this way:

> Respondents argue that because all noncitizens like Petitioner who are already present in the country are "applicants for admission" under § 1225(a)(1), those same individuals are also "seeking admission" by virtue of that status, such that § 1225(b)(2)(A) applies. The statute's plain text suggests otherwise. For section 1225(b)(2)(A) to apply, several conditions must be met – in particular, an examining immigration officer must determine that the individual is: (1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted. For a noncitizen to be deemed "seeking admission," they must be currently taking active steps or some kind of present-tense action to seek lawful entry into the U.S.

---

[4] Respondents also argue that Judge Mitchell misconstrued § 1225's title, legislative purpose, and historical interpretations in finding § 1225(b)(2)(A) did not control Petitioner's detention. But a court may only consider extrinsic evidence to "resolve [textual] ambiguities." *McGraw v. Barnhart*, 450 F.3d 493, 499 (10th Cir. 2006). And as the Court finds § 1225(b)(2)(A) unambiguous, it need not address Respondents' remaining objections.

> Courts have found that noncitizens who are just present in the country, who have been here for years upon years and never proceeded to obtain any form of citizenship, are not "seeking admission" under § 1225(b)(2)(A).

*Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *5 (D. Colo. Oct. 24, 2025) (cleaned up; citations omitted); *see also Sacvin v. Ybarra*, No. 2:25-CV-01031-KG-JFR, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025).[5]

On this broader question, Respondents also argue that this interpretation runs afoul of the legislative intent behind the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996. Respondents note that the statute was created to correct an "anomaly" whereby immigrants attempting to enter the United States lawfully were "in a worse position" than immigrants who entered illegally and argue that Judge Mitchell's statutory interpretation would "effectively repeal[]" the IIRIRA. Obj. at 8. But "when Congress enacted the IIRIRA, it did not fully disrupt the old system, including the system of detention and release on bond." *Hernandez*, 2025 WL 2996643, at *7. In other words, "Congress' concern about adjusting the law in some respects to reduce inequities in the removal process did not mean Congress intended to entirely up-end the existing detention regime by subjecting all inadmissible noncitizens to mandatory detention." *Id.* Thus, the Court rejects Respondents' suggestion that Judge Mitchell's interpretation effectively overrules the IIRIRA.

---

[5] The court there explained:
> Section 1225(a)(1) defines an "applicant for admission" as a noncitizen "who has not been admitted *or* who arrives in the United States." In contrast, § 1225(b)(2)(A)'s detention mandate applies only to noncitizens "*seeking* admission." The statute consistently differentiates between the broader category of "applicants for admission" and the narrower subset "seeking admission." Noncitizens "seeking admission" are those who have not "effected an entry" into the United States. Noncitizens who entered the country years earlier are not considered to be "seeking admission," and therefore fall under § 1226 rather than § 1225(b)(2)(A).

*Sacvin*, 2025 WL 3187432, at *3 (citations omitted).

In sum, while the Court is aware that other district courts have disagreed, it continues to find that Petitioner is not "seeking admission," as defined in § 1225(b)(2)(A), simply because he entered the United States without permission eight years ago. *See Diaz*, 2025 WL 3296310, at *2-3; *Escarcega v. Olson*, No. CIV-25-1129-J, 2025 WL 3243438, at *2-3 (W.D. Okla. Nov. 20, 2025).

### C. Section 1226

Having found § 1225(b)(2)(A) inapplicable to Petitioner, the Court agrees with Judge Mitchell that § 1226(a) controls his detention. *See Loa Caballero v. Baltazar*, No. 25-CV-03120-NYW, 2025 WL 2977650, at *4 (D. Colo. Oct. 22, 2025) ("The Court joins the numerous courts across the country that have held that [noncitizens not apprehended at the border, who have been present in the United States for many years without lawful status] are subject to the discretionary detention framework of § 1226(a)"). Noncitizens detained under § 1226(a) are generally entitled to a prompt bond hearing before an immigration judge. *See Hernandez*, 2025 WL 2996643, at *8 (finding similarly situated noncitizen entitled to a bond hearing under § 1226(a)). Here, Petitioner has not received a bond hearing and Respondents raise no objection challenging their obligation to provide bond hearings for noncitizens under § 1226(a). Therefore, the Court finds that Petitioner is entitled to a bond hearing and Respondents' failure to provide one violates § 1226(a) of the INA.

### IV. Conclusion

For the reasons above, the Court ADOPTS the thorough and well-reasoned Report and Recommendation [Doc. No. 13] on de novo review and GRANTS Petitioner's Amended Petition in so far as it finds Respondents violated the INA. Accordingly, the Court ORDERS Respondents

to provide Petitioner with a prompt bond hearing under 8 U.S.C. § 1226(a) or otherwise release Petitioner.[6]

    A separate judgment will enter.

    IT IS SO ORDERED this 8th day of December, 2025.

BERNARD M. JONES
UNITED STATES DISTRICT JUDGE

---

[6] The Report and Recommendation also recommends that Respondents be ordered to file a certification affirming that Petitioner has been provided with a bond hearing within five business days or has been released if no bond hearing was provided. *See* Report and Recommendation at 19-20. The Court finds this unnecessary.